Filed 1/25/21  In re D.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.R., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  C.I. et al.,  Defendants and Appellants. | E075773  (Super.Ct.No. J282675)  OPINION |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant C.I.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant D.R.

1

Michelle D. Blakemore, County Counsel, and Pamela J. Walls, Special Counsel, for Plaintiff and Respondent.

Charlotte I. (mother) appeals from the order terminating her parental rights as to her minor son, D.R., under Welfare and Institutions Code section 366.26 (unlabeled statutory references are to this code). Mother, whose whereabouts were unknown throughout most of the proceedings, challenges the adequacy of the notice given for the section 366.26 hearing because the minor's maternal grandparents were not notified. David R. (father) joins mother's appeal and argues that we should reinstate his parental rights if we reinstate mother's. We affirm.

BACKGROUND

In July 2018, when mother's fifth child, A.W., was approximately four months old, A.W. was removed from mother's custody because of mother's substance abuse and other issues. The court found the jurisdictional allegations true and ordered reunification services. In January 2019, reunification services were terminated, and a selection and implementation hearing (section 366.26 hearing) was set for November 2019 and then continued.

The present case began in October 2019, when D.R. was born. Mother, who was 36 years old, tested positive for amphetamines at D.R.'s birth. She reported that she began sporadically using methamphetamine when she was 18 years old and had used methamphetamine approximately twice per week throughout her pregnancy. She last used methamphetamine the day she went into labor with D.R. When D.R. was born,

2

Father was incarcerated and awaiting trial on numerous felony charges. Mother reported that father had used methamphetamine while mother and father were in a relationship. The day after D.R. was born, San Bernardino County Children and Family Services (CFS) detained D.R. after securing a warrant. D.R. was placed in a foster home.

Several days after D.R.'s birth, a juvenile dependency petition was filed, alleging under subdivisions (b)(1) and (j) of section 300 that D.R. was at substantial risk of harm because of mother's and father's substance abuse problems and mother's failure to reunify with A.W. The petition further alleged under subdivision (g) of section 300 that father was unable to provide for D.R. because of father's incarceration. A detention hearing was held on October 7, 2019, and mother and father (collectively, parents) were both present. D.R. was detained from parents. Once weekly supervised visits were ordered for parents. At parents' request, the court ordered paternal grandmother to be assessed for placement. The court also ordered paternity testing of father, at father's request. The court directed parents to "fill out a contact-information form" with their mailing addresses and ordered parents to notify their attorneys and CFS of any changes to their mailing addresses. The court advised parents that it would proceed without them if they failed to appear for hearings.

The day of the detention hearing, mother filled out a form providing CFS with her mailing address. Mother also filed out a form entitled "Family Find and ICWA Inquiry," which asked for mother's "first and second choice for relative or close family find placement." The only relative of D.R.'s whom mother identified on the form was D.R.'s

3

paternal grandmother. A social worker reported that before the detention hearing mother provided CFS with "[r]elative [i]nformation and other identifying information."

The jurisdiction and disposition hearings were set for October 28, 2019. Both parents were present for the hearings that day, but the hearings were continued. On November 15, 2019, CFS reported that mother had not had any contact with CFS and that her whereabouts were unknown. Several days later, on November 18, 2019, both parents were again present for the contested jurisdiction and disposition hearings, but they were continued again. Father had been released from custody several days before the November 2019 hearing. Parents were advised that the court would proceed without them at the next hearing if they failed to appear. While at court, parents informed a social worker that they were both homeless. Parents agreed to update CFS concerning their whereabouts and to inform CFS of any changes to mother's telephone number, which both parents used. Several days later, mother's parental rights to A.W. were terminated. The paternity test results showed that father was D.R.'s biological father.

In December 2019, paternal grandmother was approved for placement, and D.R. was placed with her. Parents visited with D.R. twice sometime between the detention hearing in November 2019 and January 15, 2019. D.R. was not bonded or attached to parents.

At the continued jurisdiction and disposition hearing held on January 21, 2020, neither parent was present. The juvenile court sustained the allegations under subdivision (b)(1) of section 300 as to father and under subdivisions (b)(1) and (j) of section 300 as to

4

mother. The allegation against father under subdivision (g) of section 300 was dismissed because father had been released from custody. Reunification services were not ordered for father because he was merely the biological father, and the court concluded that it was not in D.R.'s best interest to provide father with services. Reunification services were bypassed for mother under subdivision (b)(10) of section 361.5. D.R. was declared a dependent and continued to be placed with paternal grandmother. The court found that there were no known maternal relatives available to be considered for placement. The court found that the permanent plan of adoption was appropriate. The court set the section 366.26 hearing for May 2020. CFS was ordered to notify parents of the hearing.

In March 2020, CFS asked the court for authorization to serve both parents with notice of the section 366.26 hearing via their attorneys. Attached to those requests were declarations of due diligence, detailing the efforts CFS had made to locate parents, whose whereabouts CFS concluded were unknown. After reviewing the requests, the court authorized CFS to serve notice of the section 366.26 hearing on both parents through their attorneys of record. CFS timely served parents (at their last known addresses), their attorneys, and D.R.'s paternal grandmother with notice of the section 366.26 hearing. Pursuant to the signed stipulation of parents' attorneys, the May 2020 section 366.26 hearing was continued to September 21, 2020. Notice of the rescheduled section 366.26 hearing was sent to parents and paternal grandmother.

In September 2020, CFS reported that D.R., who was 11 months old, shared a strong mutual attachment with paternal grandmother, and he was very comfortable in her

5

care.  Paternal grandmother wanted to adopt D.R. and to provide him "with a good and stable home."

At the scheduled section 366.26 hearing, mother and father were not present. Father was in jail.  Father's counsel requested a one-day continuance for father to be transported for the hearing, which the court granted.  Father appeared at the hearing the next day, but mother did not.  As to the selection and implementation of a permanent plan, parents' counsel did not argue that any exception to termination of parental rights applied, but they requested that the permanent plan be legal guardianship.  The juvenile court found that D.R. was likely to be adopted and terminated mother's and father's parental rights.

DISCUSSION

Mother and father contend that notice of the section 366.26 hearing was improper because CFS failed to notify the maternal grandparents of the hearing and to conduct any investigation into their identities or location.  CFS counters that the argument is forfeited because parents did not raise it below, service was proper under the plain language of the statute, and any error was harmless beyond a reasonable doubt.  We agree with CFS on all points.

Section 294 prescribes the manner in which notice of a section 366.26 hearing is to be given.  (§ 294, subd. (a).)  When (1) the parent is not present at the hearing setting the section 366.26 hearing, (2) the parent's whereabouts are unknown, (3) the court determines that the efforts to locate and serve the parent were conducted with due

6

diligence, and (4) the recommendation for a permanent plan is adoption, service of the section 366.26 hearing notice "shall be to that parent's attorney of record, if any, by certified mail, return receipt requested." (§ 294, subd. (f)(7)(A).) In addition, "the court shall also order that notice be given to the grandparents of the child, if their identities and addresses are known." (*Ibid.*) The scope of the legal duty to notify grandparents presents a question of statutory interpretation, which we independently review. (*In re R.L.* (2016) 4 Cal.App.5th 125, 138.)

At the section 366.26 hearing, parents' counsel did not object that notice was inadequate in any way. Failure to object at the section 366.26 hearing about the sufficiency of the notice results in forfeiture of the issue on appeal. (*In re Z.S.* (2015) 235 Cal.App.4th 754, 771 (*Z.S.*).)

In any event, there was no error. After the juvenile court concluded that parents' whereabouts were unknown, notice of the section 366.26 hearing was required to be given to D.R.'s grandparents "if their identities and addresses [were] known." (§ 294, subd. (f)(7)(A).) Here, CFS did not have any information about the identity or the location of the maternal grandparents.[1] Mother had appeared in the proceeding, had spoken with CFS about her relatives, and had filled out a form specifically requesting information about her family. Despite being given the opportunity, mother did not

---

[1]    Mother mistakenly asserts that paternal grandmother also was not notified of the section 366.26 hearing. As CFS correctly points out, paternal grandmother was sent notice of the hearing. On the proofs of service for the original and continued section 366.26 hearing dates, paternal grandmother is listed as being served as D.R.'s caregiver, which she was.

7

provide CFS any information about the maternal grandparents. Mother argues that the record does not show that CFS ever asked mother for information about her parents. She points out that the form she filled asked about relatives for placement purposes only. In addition to that form, however, CFS reported that mother had given CFS information about relatives before the detention hearing was held, although CFS did not provide any detail about the content of the information provided. Regardless of whether mother was specifically asked about the identity of D.R.'s maternal grandparents, she had the opportunity to provide CFS with that information herself. And mother does not cite any authority indicating that CFS was obliged to request information from mother about the maternal grandparents. Absent any information about the identities or location of the maternal grandparents, the statutory requirement to notify them about the section 366.26 hearing was not triggered. CFS therefore did not violate section 294 by failing to notify the maternal grandparents of the hearing.

Parents nevertheless argue that CFS should have conducted some reasonable effort to locate the maternal grandparents. But the plain language of the statute does not require that any effort be made to locate the minor's grandparents when the parent's whereabouts are unknown. (§ 294, subd. (f)(7)(A).) Nor do parents cite any authority indicating that such a requirement exists. Relying on *In re Angela C.* (2002) 99 Cal.App.4th 389, 393, mother contends that due process requires that notice of the section 366.26 hearing must be reasonably calculated "under all circumstances" to apprise the interested parties of the section 366.26 hearing. But *In re Angela C.* does not stand for that broad proposition. *In*

8

*re Angela C.* involved the failure to notify parents of a continued section 366.26 hearing after the parents had received proper notice of a prior section 366.26 hearing date. (*In re Angela C.*, *supra*, at pp. 392-393.) Given that the plain language of the statute does not include a requirement that efforts be made to locate the child's grandparents when the whereabouts of the parent are unknown, we conclude that CFS did not err by failing to conduct an investigation into the identity and location of the maternal grandparents.

Mother also argues that CFS was required to make some minimal effort to locate the maternal grandparents because section 294 mandates service on the grandparents when the parent's whereabouts are unknown. The argument fails because the requirement to serve the grandparents is triggered only if the identities and locations of the grandparents are known. The statute does not require CFS to investigate if the grandparents' identities and locations are unknown, as they are here.

Even if notice of the section 366.26 hearing was defective for failure to notify the maternal grandparents, the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *In re Steven H.* (2001) 86 Cal.App.4th 1023, 1033.) Mother argues that failure to provide notice to the maternal grandparents amounts to structural error that is subject to automatic reversal. We reject the argument because the error here "can 'be quantitatively assessed in the context of other evidence presented in order to determine whether [it was] harmless beyond a reasonable doubt.'" (*In re James F.* (2008) 42 Cal.4th 901, 917; *In re Angela C.*, *supra*, 99 Cal.App.4th at pp. 395-396.)

Mother does not argue, and the record does not reflect, how the result of the hearing would have differed had the maternal grandparents received notice of the section 366.26 hearing. Mother failed to maintain contact with CFS, did not attend the jurisdiction and disposition hearing, only visited D.R. twice over the course of 11 months, and did not visit D.R. at all in the eight months preceding the section 366.26 hearing. Once the court finds by clear and convincing evidence that the child is likely to be adopted, as the court did here, "termination of parental rights is the preferred permanent plan absent proof that termination would be detrimental to the child's best interests" because of application of a statutory exception to termination. (*In re Angela C.*, *supra*, 99 Cal.App.4th at p. 396; § 366.26, subd. (c)(1)(B).) Under the only possible statutory exception applicable here, "[t]he court may find such detriment when a parent establishes that he or she has maintained regular visitation and contact with the minor and the minor would benefit from continuing the relationship." (*In re Angela C.*, at p. 396; § 366.26, subd. (c)(1)(B)(i).) Given mother's failure to maintain regular visitation and contact with D.R., there is no likelihood that mother, even if she had appeared at the section 366.26 hearing, could carry her burden of showing that it would be detrimental to D.R. to terminate her parental rights. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 953-954; § 366.26, subd. (c)(1)(B)(i).) Because there is no likelihood that mother could carry her burden of demonstrating that a statutory exception to termination of parental rights applied, we conclude that any error in failing to notify D.R.'s maternal grandparents of

10

the section 366.26 hearing was harmless beyond a reasonable doubt.[2] (*Z.S.*, *supra*, 235 Cal.App.4th at p. 773.) We need not and do not address father's argument that termination of his parental rights should be reversed because his argument is dependent on reinstatement of mother's parental rights.

DISPOSITION

The order terminating mother's and father's parental rights is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ       <br>J.

We concur:

McKINSTER      <br>         Acting P. J.

CODRINGTON      <br>        J.

---

[2] In support of their argument that the error was not harmless, parents rely on *Steven H.*, *supra*, 86 Cal.App.4th 1023, in which the court concluded that the failure to notify the maternal grandmother was not harmless beyond a reasonable doubt because it appeared likely that the grandmother would have notified the mother of the hearing had the grandmother received notice. (*Id.* at p. 1033.) That conclusion is inapposite here because mother's appearance at the hearing would not have affected the result.

11